UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 3:18cr239 (RNC) |
| v. | VIOLATIONS: |
| JOHN EDMONDS | 18 U.S.C. § 371 (Conspiracy)<br>18 U.S.C. § 1348 (Commodities Fraud) |

FILED 2018 OCT -9 P 1:07 US DISTRICT COURT HARTFORD CT

## INFORMATION

The United States Attorney charges:

### COUNT ONE
(Conspiracy)

1.  At all relevant times, the defendant, JOHN EDMONDS, was employed as a precious metals trader at a United States bank that was headquartered in New York (the "Bank").

2.  From in or around 2009 until in or around 2015, in the District of Connecticut and elsewhere, EDMONDS knowingly and willfully did combine, conspire, confederate, and agree with other employees of the Bank, who are known and unknown to the United States Attorney, to commit certain offenses against the United States, namely:

    a.  Wire fraud, that is, knowingly and with the intent to defraud, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343;

b. Commodities fraud, that is, knowingly and with the intent to defraud, to execute and attempt to execute a scheme and artifice to defraud a person in connection with a commodity for future delivery, namely precious metals futures contracts, in violation of Title 18, United States Code, Section 1348(1);

c. Commodities price manipulation, that is, knowingly and intentionally to manipulate and attempt to manipulate the price of a commodity for future delivery, namely precious metals futures contracts, on or subject to the rules of registered entities, namely the New York Mercantile Exchange, Inc. ("NYMEX") and Commodity Exchange, Inc. ("COMEX"), in violation of Title 7, United States Code, Section 13(a)(2); and

d. Spoofing, that is, knowingly to engage in trading, practice, and conduct, on and subject to the rules of registered entities, namely the NYMEX and COMEX, that was "spoofing," that is, bidding and offering with the intent to cancel the bid and offer before execution, in violation of Title 7, United States Code, Sections 6c(a)(5)(C) and 13(a)(2).

## Purpose of the Conspiracy

3. The purpose of the conspiracy was for EDMONDS and his co-conspirators to deceive other market participants by injecting materially false and misleading information into the precious metals futures contracts markets about the existence of supply and demand for those futures contracts, and thus to induce other market participants to buy and sell futures contracts at prices, quantities, and times that they otherwise likely would not have traded, all in order to make money and avoid losses for EDMONDS, his co-conspirators, and for the Bank.

## Manner and Means of the Conspiracy

4. The manner and means by which EDMONDS and his co-conspirators sought to accomplish and did accomplish the purpose of the conspiracy included the following:

a.  EDMONDS and his co-conspirators, in order to make money and avoid losses for themselves and for the Bank, routinely placed electronic orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution (the "Spoof Orders"). EDMONDS learned this deceptive trading strategy from more senior traders at the Bank, and he personally deployed this strategy hundreds of times with the knowledge and consent of his immediate supervisors.

b.  EDMONDS and his co-conspirators placed the Spoof Orders electronically from computers at the Bank's office in New York onto the NYMEX and COMEX, which were commodities exchanges operated by the CME Group Inc. ("CME Group"), a commodities marketplace located in Illinois. The information conveyed in the Spoof Orders was then transmitted via interstate wire communications to other market participants located in, among other places, Connecticut.

c.  In placing the Spoof Orders, EDMONDS and his co-conspirators intended to deceive other market participants by injecting materially false and misleading information into the markets for precious metals futures contracts about the existence of supply or demand for those futures contracts. The Spoof Orders thus were intended to induce other market participants to trade against the conspirators' genuine orders (that is, orders that EDMONDS and his co-conspirators did want to execute) on the opposite side of the market from the Spoof Orders at prices, quantities, and times at which the other market participants otherwise would not have traded.

d.  The Spoof Orders thus were designed to, and did, artificially move the price of precious metals futures contracts in a direction that was favorable to EDMONDS and

his co-conspirators at the Bank, to the detriment of other market participants, including other market participants in Connecticut.

## Overt Acts

5.  In furtherance of the conspiracy and to effect its unlawful objects, EDMONDS committed and caused to be committed, in the District of Connecticut and elsewhere, the following overt act, among others:

 a. On or about October 12, 2012, at approximately 1:08:48.831 p.m. (Central Daylight Time), EDMONDS placed a Spoof Order to sell 402 silver futures contracts at the price of $33.610.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Commodities Fraud)

6.  Paragraphs 1-5 of this Information are realleged and incorporated as though set forth fully herein.

7.  From in or around 2009 until in or around 2015, EDMONDS knowingly and with the intent to defraud executed and attempted to execute a scheme and artifice to defraud a person in connection with a commodity for future delivery, namely precious metals futures contracts, as described in Paragraphs 1-5.

8.  On or about October 12, 2012, at approximately 1:08:48.831 p.m. (Central Daylight Time), in the District of Connecticut and elsewhere, EDMONDS knowingly executed the scheme and artifice by transmitting and causing to be transmitted to a CME Group server an offer to sell approximately 402 silver futures contracts ("EDMONDS's Spoof Order"), with the intent, at the time the offer was entered, to cancel the offer before it could be executed, which fraudulently

represented the state of the market, so that EDMONDS could purchase approximately 6 silver futures contracts at a below-market price.

9. EDMONDS's Spoof Order caused other market participants to react and trade at prices, quantities, and times at which they otherwise would not have traded, but for EDMONDS's Spoof Order, including a precious metals trader in Connecticut who sold a single silver futures contract at 1:08:48.837 p.m. at the price of $33.585.

All in violation of Title 18, United States Code, Section 1348(1).

---

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

MATTHEW F. SULLIVAN
TRIAL ATTORNEY

JOHN H. DURHAM
UNITED STATES ATTORNEY
DISTRICT OF CONNECTICUT

AVI M. PERRY
ASSISTANT U.S. ATTORNEY