UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

------------------------------ x
                               :
UNITED STATES OF AMERICA,      :
                Plaintiff,     :     Criminal No.
                               :   3:18-CR-00239 RNC-1
           vs.                 :
                               :     October 9, 2018
JOHN EDMONDS,                  :
                Defendant.     :
                               :
------------------------------ x

Federal Building
450 Main Street
Hartford, Connecticut

CHANGE OF PLEA HEARING

(Transcription from Electronic Recording)

Held Before:

THE HON. ROBERT A. RICHARDSON
United States Magistrate Judge

Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:

    For the Plaintiff:

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street
        New Haven, Connecticut 06510
        203-821-3740
        avi.perry@usdoj.gov
            BY:  AVI M. PERRY, ESQ.
              Assistant U.S. Attorney

    For the Defendant:

        LAW FIRM OF JOSEPH DiBENEDETTO, P.C.
        222 Broad Street - Suite 2707
        New York, New York 20279
        212-608-5858
        jdibenedetto@dibenedettolaw.com
            BY:  JOSEPH DiBENEDETTO, ESQ.

1              (Proceedings commenced at 11:40 a.m.)

2

3              THE COURT:  Good morning.  Please be

4         seated.

5              ALL:  Good morning, your Honor.

6              THE COURT:  That's okay.  Please be

7         seated.

8              We are here this morning on the United

9         States vs. John Edmonds, Docket Number 3:18-

10        CR-239 RNC.  I'm Judge Robert Richardson.

11             May I please have counsel identify

12        themselves for the record?

13             MR. PERRY:  Good morning, your Honor.

14        Avi Perry on behalf of the United States.

15        I'm joined today at counsel table by my

16        colleagues, Trial Attorney Matthew Sullivan

17        from the Fraud Section in DC, by Special

18        Agent Jonathan Luca from the FBI.

19             ATTORNEY SULLIVAN:  Good morning, your

20        Honor.

21             THE COURT:  Good morning.

22             MR. DiBENEDETTO:  Good morning, Judge.

23        Joseph DiBenedetto for Mr. Edmonds.

24             Judge, my sincerest apologies for being

25        late.  We left bright and early this morning

```
 1              and four hours later we are here.  So my

 2              apologies.

 3                   THE COURT:  No worries.  Thank you.

 4                   Good morning, gentlemen.

 5                   THE DEFENDANT:  Good morning.

 6                   THE COURT:  All right.  As I understand

 7              it Mr. Edmonds would like to change his

 8              plea; is that correct?

 9                   MR. DiBENEDETTO:  That is correct,

10              Judge.

11                   THE COURT:  All right.

12                   MR. DiBENEDETTO:  Just if it's okay

13              with your Honor, just one observation.  I

14              have Rule 83.1 in my possession.  I'm not

15              admitted to this District Court.  I'm in the

16              process of applying.  This plea process has

17              been a bit more accelerated than

18              anticipated.  I look to have this done ASAP.

19                   THE COURT:  All right.  Any objection?

20                   MR. PERRY:  No objection, your Honor.

21              I will just echo what Attorney DiBenedetto

22              said which is the parties initially having

23              envisioned a longer period of time in which

24              to resolve this matter, in part because of

25              the statute of limitations issue that your
```

1          Honor I believe is aware of.  It's on a

2          somewhat accelerated timeline which I think

3          explains the fact that Attorney DiBenedetto

4          didn't yet have a chance to apply for

5          (unintelligible) admission.

6              THE COURT:  Okay.  All right.  So we

7          will try to get that expedited.

8              MR. DiBENEDETTO:  Thank you, Judge.

9              THE COURT:  So, since I believe this is

10         Mr. Edmonds' first appearance in court let

11         me just advise him of his rights because I

12         think we need to that.

13             Mr. Edmonds, just so that you

14         understand you have the right to remain

15         silent and by that I mean you have no

16         obligation to speak or make any statement at

17         all.  In the event that you do speak or make

18         a statement you should be advised that your

19         statement can and likely will be used

20         against you.  You understand that, sir?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And if you've already

23         started to speak or make a statement please

24         be advised that you have no obligation to

25         continue speaking.  You may stop at any

1          time.  You understand that, sir?

2               THE DEFENDANT:  Yes, your Honor.

3               THE COURT:  You also have the right to

4          be represented by an attorney at each and

5          every phase of the proceedings against you,

6          and if you cannot afford an attorney to

7          represent you, the Court can and will

8          appoint an attorney at no cost to you.  Do

9          you understand that, sir?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  And do you need -- would

12         you like the Court to appoint counsel or

13         have you retained counsel, sir?

14              THE DEFENDANT:  I have retained

15         counsel.

16              THE COURT:  All right.  Very good.

17         Thank you.

18              And let me just ask for the record so

19         that I am sure I have advised Mr. Edmonds of

20         all the rights that apply to him.  Is Mr.

21         Edmonds a U.S. citizen or a foreign

22         national?

23              MR. DiBENEDETTO:  He is a U.S. citizen,

24         Judge.

25              THE COURT:  Very good.  Thank you.

1          All right.  So before we can get to the

2     formal plea I want to advise Mr. Edmonds

3     about -- something about your judicial

4     system.

5          So there are two different types of

6     judges within our federal system; there are

7     district judges and magistrate judges and

8     they have different types of responsibility.

9          I am a magistrate judge and typically a

10    proceeding such as this one where a

11    defendant in a criminal case involving

12    felony charges is thinking about entering a

13    plea of guilty, that type of proceeding

14    would be handled by a district judge as

15    opposed to a magistrate judge.  The only way

16    a magistrate judge can hear a proceeding

17    such as this one is when the district judge

18    refers the proceeding to the magistrate

19    judge and both parties consent to that

20    referral.

21         In this instance your district judge,

22    Judge Chatigny, has referred this proceeding

23    to me to hold a hearing and make certain

24    findings and a recommendation to him as to

25    whether he should accept your plea of

1          guilty.  In the event that both sides

2          consent to that referral I'll hold the

3          hearing, I'll make recommendations to him

4          and ultimately the case will go back to

5          Judge Chatigny after that for all future

6          proceedings.

7               As I indicated I can't hear this

8          proceeding unless both parties consent to

9          having me do so.  So let me ask you, sir, if

10         you've had a chance to discuss with your

11         attorney whether you might be willing to

12         have a magistrate judge preside over today's

13         proceeding, sir.

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  And do you understand that

16         you have the right to have this proceeding

17         before a district judge?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  And just for the record,

20         let me ask you are you willing to consent to

21         having me proceed to handle today's

22         proceeding, sir?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  All right.

25              Does the Government consent to having

1          me handle today's proceeding?

2                    MR. PERRY:  Certainly, your Honor.

3                    THE COURT:  All right.  Thank you.

4                    Attorney DiBenedetto, do you have a

5          consent form?

6                    MR. DiBENEDETTO:  I do, Judge.

7                    THE COURT:  Thank you.

8                    MR. DiBENEDETTO:  It has been executed

9          by myself and Mr. Edmonds and the

10         Government.

11                   THE COURT:  All right.  In that case

12         you may go ahead and file it here in court,

13         sir.

14                   (Pause.)

15                   THE COURT:  All right.  Based on the

16         representations made here in open court, the

17         answers that Mr. Edmonds has given me here

18         in open court as well as the fully executed

19         consent form that I just reviewed I find

20         that Mr. Edmonds understands that he has the

21         right to have this proceeding before a

22         district judge and that he has knowingly and

23         voluntarily waived that right and consented

24         to proceed before me today.

25                   Mr. Edmonds, before I can get to your

1          plea there are a number of questions that I

2          need to ask you while you're under oath.

3          The purpose of the questions is to make sure

4          that you know what you're doing, that you

5          understand your rights, that you understand

6          the consequences entering a plea of guilty,

7          and for me to make sure that you are in fact

8          guilty of the offenses to which you're

9          offering to plead guilty today because I

10         can't accept a guilty plea from someone who

11         is not guilty of the offenses to which

12         they're offering to plead guilty.

13             If at any point during my questioning I

14         ask you a question that you don't understand

15         or it doesn't make sense to you, please let

16         me know and I'll try to rephrase it.  All

17         right?

18             THE DEFENDANT:  Um-hum.

19             THE COURT:  Very good.  Thank you.

20             Could you please stand and raise your

21         right hand while the Courtroom Deputy puts

22         you under oath?

23

24             JOHN EDMONDS, the Defendant herein, was

25         duly sworn by the Courtroom Deputy and

```
1              testified under oath as follows:

2

3                   THE COURT:  Mr. Edmonds, just so that

4              you understand you have sworn to tell the

5              truth under oath, so please be advised that

6              if you provide any false answers to my

7              questions you may be liable for perjury or

8              for making a false statement under oath.  Do

9              you understand that, sir?

10                  THE DEFENDANT:  Yes, your Honor.

11                  THE COURT:  Very good, thank you.

12                  Could you please tell me your full

13             name?

14                  THE DEFENDANT:  John Joseph Edmonds,

15             Jr..

16                  THE COURT:  And have you ever used any

17             other names, sir?

18                  THE DEFENDANT:  No, your Honor.

19                  THE COURT:  Where were you born?

20                  THE DEFENDANT:  I was born in Brooklyn,

21             New York.

22                  THE COURT:  And so just for the record

23             you are a U.S. citizen, correct?

24                  THE DEFENDANT:  Yes, your Honor.

25                  THE COURT:  How old are you, sir?
```

```
1              THE DEFENDANT:  I am 36 years old.

2              THE COURT:  And what level of education

3         have you had?

4              THE DEFENDANT:  I received four years

5         of undergraduate education.

6              THE COURT:  Are you presently under the

7         influence of any alcohol, drugs or medicine,

8         sir?

9              THE DEFENDANT:  No, sir.

10             THE COURT:  Have you had any alcohol,

11        drugs or medicine within the past 72 hours?

12             THE DEFENDANT:  I've had my high blood

13        pressure medication, sir.

14             THE COURT:  Okay.  And is there

15        anything about the high blood pressure

16        medication that makes it difficult for you

17        to understand or follow what's going on in

18        the courtroom today?

19             THE DEFENDANT:  No, your Honor.

20             THE COURT:  Are you now or have you

21        recently been under treatment by any

22        psychiatrist, psychologist or other mental

23        health provider?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  And without getting into
```

1           the specifics of that is there anything

2           about either the treatment or any diagnosis

3           that makes it difficult for you to follow

4           what's going on in the courtroom today?

5                THE DEFENDANT:  No, your Honor.

6                THE COURT:  Thank you.  How is your

7           health today?

8                THE DEFENDANT:  Good, you Honor.

9                THE COURT:  Is your mind clear?  Are

10          you able to understand what's going on in

11          the courtroom?

12               THE DEFENDANT:  Absolutely, your Honor.

13               THE COURT:  Good.

14               Attorney DiBenedetto, can you tell me

15          whether you've had any difficulty dealing

16          with Mr. Edmonds?

17               MR. DiBENEDETTO:  No, Judge.  None at

18          all.

19               THE COURT:  Very good.  Have you any

20          doubts as to his competence to proceed with

21          a plea at this point?

22               MR. DiBENEDETTO:  No, Judge.

23               THE COURT:  Okay.

24               Mr. Edmonds, are you satisfied with the

25          services of your attorney?

```
1                    THE DEFENDANT:  Absolutely, your Honor.

2                    THE COURT:  All right.  Have you

3           received a copy of the document containing

4           the written charges against you also known

5           as the information?

6                    THE DEFENDANT:  I have, your Honor.

7                    THE COURT:  And have you had a chance

8           to discuss the charges fully with your

9           attorney?

10                   THE DEFENDANT:  Yes, we have discussed

11          it.

12                   THE COURT:  Do you understand the

13          charges?

14                   THE DEFENDANT:  Yes, your Honor.

15                   THE COURT:  All right.  You may be

16          seated, thank you.

17                   Now, the charges to which I'm told you

18          want to plead guilty, sir, are contained in

19          a two-count information.  Under Count 1

20          you're charged with conspiracy to commit

21          wire fraud in violation of 18 United States

22          Code Section 1343, commodities fraud in

23          violation of 18 USC Section 1348(1),

24          commodities price manipulation in violation

25          of 7 United States Code Section 13(a)(2) and
```

1           spoofing in violation of 7 United States

2           Code Section 68(5)(c) and 13(a)(2) all in

3           violation of 18 United States Code Section

4           371.

5                Under Count 2 you would entering a plea

6           of guilty to commodities fraud in violation

7           of 18 United States Code 1348(1).

8                Do you understand that these charges

9           are felony charges, sir?  In other words,

10          they are crimes punishable by more than one

11          year in jail?

12               THE DEFENDANT:  I understand, your

13          Honor.

14               THE COURT:  I understand that you want

15          to waive your right to indictment and enter

16          a plea of guilty to those charges.  Is that

17          correct, sir?

18               THE DEFENDANT:  Yes, your Honor.

19               THE COURT:  All right.  Before I can

20          allow you to do so I need to make sure that

21          you understand that you have the right to

22          have your case presented to a grand jury, so

23          please listen carefully while I discuss that

24          with you.

25               Under the United States Constitution

1           the Government can't prosecute someone for a

2           felony charge unless it first obtains an

3           indictment from a federal grand jury.  The

4           federal grand jury is a group of citizens

5           who are called in to hear the Government's

6           evidence and the grand jury is composed of

7           at least 16 but not more than 23 people.

8                Before a grand jury could indict you of

9           the charges that you are thinking about

10          entering a plea of guilty to at least 12 of

11          the grand jurors would have to find probable

12          cause that a crime was committed and

13          probable cause that you in fact committed

14          that crime.

15               I'm told that you want to waive or give

16          up your right to indictment and not have

17          your case presented to grand jury.  If you

18          decide to do that, sir, you need to know

19          that you're giving up the possibility that

20          after hearing the Government's evidence a

21          grand jury might refuse to indict you.  Do

22          you understand that, sir?

23               THE DEFENDANT:  Yes, your Honor.

24               THE COURT:  And if you chose not to

25          waive your right to indictment the

1           Government may present the case to a grand

2           jury and ask the grand jury to indict you,

3           and the grand jury may or may not indict you

4           based on the evidence.  If you decide to

5           waive your right to indictment then the

6           charges against you will be brought against

7           you by way of the information that I think

8           you probably have in front of you right now,

9           and the Government would proceed with that

10          information the same as though you had

11          actually been indicted.  Do you understand

12          that, sir?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  And have you discussed

15          waiving your right to indictment with your

16          attorney, sir?

17               THE DEFENDANT:  I have, your Honor.

18               THE COURT:  Do you understand your

19          right to indictment as I've just explained

20          it to you?

21               THE DEFENDANT:  I do.

22               THE COURT:  Do you have any questions

23          about your right?

24               THE DEFENDANT:  I don't.

25               THE COURT:  Have any threats or

```
 1              promises been made to you to induce you to
 2              waive your right to indictment today?
 3                   THE DEFENDANT:  No, your Honor.
 4                   THE COURT:  Is anyone forcing you in
 5              any way to waive your right to indictment
 6              today?
 7                   THE DEFENDANT:  No, your Honor.
 8                   THE COURT:  Do you want to waive your
 9              right to indictment, sir?
10                   THE DEFENDANT:  Yes, your Honor.
11                   THE COURT:  Let's ask each of the
12              lawyers.  Is there reason why Mr. Edmonds
13              should not waive his right to indictment
14              today?
15                   MR. PERRY:  None that I know of, your
16              Honor.
17                   MR. DiBENEDETTO:  No, Judge.
18                   THE COURT:  Very good.  Thank you.
19                   Attorney Perry, have you prepared the
20              waiver form?
21                   MR. PERRY:  Yes.  Attorney DiBenedetto
22              has it right now.
23                   THE COURT:  All right.  In that case
24              you may go ahead and sign the form here in
25              open court, sir, both you and your attorney.
```

1          MR. DiBENEDETTO:  Judge, the document

2     was signed just before your Honor took the

3     bench.

4          THE COURT:  All right.  So let me just

5     ask Mr. Edmonds based on the questions that

6     I have asked you here in open court and

7     based on the explanation that I have given

8     you concerning your right to have your case

9     presented to a grand jury, is there anything

10     I have said or disclosed to you that have

11     caused you in any way to change your mind

12     about signing that form and waiving your

13     right to indictment, sir?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Very good.  In that case

16     you may go ahead and file the form.

17          MR. DiBENEDETTO:  Thank you, Judge.

18          MR. PERRY:  And your Honor, I'm holding

19     a copy of the signed information in my hand.

20     May I approach?

21          THE COURT:  Yes, you may.  Thank you.

22          (Pause.)

23          THE COURT:  Okay.  I have reviewed the

24     Waiver of Indictment form based on the form

25     as well as the answers given to me here in

1           open court.  I find that Mr. Edmonds has

2           knowingly, intelligently and voluntarily

3           waived his right to indictment and therefore

4           I will accept his waiver and I am signing

5           the form here in open court.

6               And so for the record I am handing the

7           fully executed form with my signature as

8           well as the signed, originally signed

9           information to my Courtroom Deputy for

10          filing.

11              Mr. Edmonds, as I indicated earlier in

12          the proceeding one of the reasons that we're

13          having the hearing is to make sure that you

14          understand your rights.  I'm sure that your

15          lawyer has already explained your rights to

16          you but I need to make sure you understand

17          them so please bear with me while I go over

18          them again with you.

19              As I indicated earlier the first and

20          most important thing that you need to

21          understand is that you have the right to

22          enter a plea of not guilty and continue with

23          that plea of not guilty even if you are in

24          fact guilty of the offenses to which you're

25          offering to plead guilty today.  If you

1           decide to enter a plea of not guilty and

2           continue with that plea of not guilty you'll

3           be entitled to a trial by a jury with the

4           assistance of an attorney at each and every

5           phase of the proceedings against you, and as

6           I indicated earlier if you cannot afford an

7           attorney to represent you the Court can and

8           will appoint an attorney at no cost to you.

9           Do you understand that, sir?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  And if you decide to go to

12          trial you would be presumed innocent and the

13          Government would have to prove your guilt

14          beyond a reasonable doubt.  If the

15          Government were to fail to prove your guilt

16          beyond a reasonable doubt you would have to

17          be found not guilty.  Do you understand

18          that, sir?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  Again, if you decide to

21          enter a plea of not guilty and go to trial,

22          during the course of any such trial any

23          witnesses for the Government would have to

24          come to court and testify in your presence,

25          and your lawyer would have the right to

1           cross examine those witnesses as well as to

2           object to any evidence offered by the

3           Government.  Do you understand that you have

4           that right, sir?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  And at a trial you would

7           have the right to testify if you chose to do

8           so, however you would not be required to

9           testify.  If you chose not to testify the

10          jury would be instructed that it could not

11          hold that fact against you.  Do you

12          understand that, sir?

13               THE DEFENDANT:  Yes, your Honor.

14               THE COURT:  And if the case were to go

15          to trial you would have the right to present

16          evidence in your defense and to require the

17          attendance of witnesses to testify in your

18          defense, but you would not be required to

19          present any evidence or call any witnesses

20          during your defense.  If you decided not to

21          present any evidence or call any witnesses

22          during your defense a jury would be

23          instructed that it could not hold those

24          facts against you.  Do you understand that,

25          sir?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Now, as I just explained to

3     you at the very outset of the proceeding you

4     have certain rights under the Constitution

5     including a right to remain silent and

6     something known as a privilege against self-

7     incrimination.

8          Under the right to remain silent

9     basically you have a right to remain silent,

10    you have no obligation to speak or make any

11    statement at all.  And under the privilege

12    against self-incrimination the Government

13    can't force or compel you to produce

14    evidence against yourself in a criminal

15    case.  Do you understand these rights, sir?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  If you decide to continue

18    with your intention to enter a plea of

19    guilty today you'll be giving up or waiving

20    both of these rights.  More specifically,

21    I'm going to be asking you questions here in

22    open court and you're going to have to

23    answer those questions thereby giving up or

24    waiving your right to remain silent.  And in

25    answering my questions you're going to have

1           to specifically acknowledge your guilt

2           thereby giving up or waiving your privilege

3           against self-incrimination.  Do you

4           understand that, sir?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  And are you willing to

7           waive or give up both your right to remain

8           silent and your privilege against self-

9           incrimination in connection with today's

10          proceeding?

11               THE DEFENDANT:  I am, your Honor.

12               THE COURT:  If you decide to continue

13          with your intention to enter a plea of

14          guilty and Judge Chatigny accepts your plea

15          of guilty, you'll be giving up you

16          constitutional right to a jury trial as well

17          as all of the other rights that I've just

18          explained to you here in open court.  There

19          will be no trial of any kind.  Instead you

20          would be found guilty based on your plea of

21          guilty.  Do you understand that, sir?

22               THE DEFENDANT:  Yes, your Honor.

23               THE COURT:  Do you have any questions

24          about any of the rights that I've just

25          explained to you here in open court, sir?

1          THE DEFENDANT:  I do not at this time,

2     your Honor.

3          THE COURT:  You understand all of the

4     rights that I've just explained to you.

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.  Are you willing

7     to give up all of the rights that I've just

8     explained to you in connection with today's

9     proceeding?

10          THE DEFENDANT:  Yeah, your Honor.

11          THE COURT:  All right.  So there is a

12     plea agreement dated October 9th, 2018.  Have

13     you had a chance to read that document, sir?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  And have you

16     had a chance to discuss it fully with your

17     attorney?

18          THE DEFENDANT:  I have, your Honor.

19          THE COURT:  Do you understand the

20     agreement?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Do you wish to

23     sign the agreement?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  All right.  There is a

```
1              signature line on page 9.  You may go ahead
2              and sign that here in open court.
3                   (Pause.)
4                   MR. PERRY:  Would your Honor like the
5              parties to sign the stipulation at this time
6              as well?
7                   THE COURT:  Not yet, no.  Thank you.
8                   MR. PERRY:  Sorry, your Honor.  I keep
9              jumping the gun here.  I apologize.
10                  THE COURT:  No worries, thank you.
11                  (Pause.)
12                  THE COURT:  So, Mr. Edmonds, I've just
13             had you sign the signature line on page 9 of
14             the plea agreement.  There is another
15             signature line on page -- I thought there
16             was a second one -- page 11.  I'm not going
17             to have you sign that just yet.  Instead
18             what I want to do is make sure that you
19             understand that if during the course of
20             today's hearing I say something that comes
21             as a surprise to you or you hear something
22             that causes you to change your mind about
23             entering a plea of guilty, you have the
24             right just to say to me, hey, I've changed
25             my mind or I don't want to do this and I
```

1          will end the proceeding right then and

2          there.  And for that reason I don't have you

3          signed the second signature line under the

4          stipulation of offense conduct which is

5          basically you saying here's what I did that

6          shows that I'm guilty.  I don't have you

7          sign that up until the very moment that you

8          officially stand up and formally enter a

9          plea of guilty.

10              I also leave that signed plea agreement

11         at your table as a reminder to you that you

12         have the right at any point during this

13         proceeding to change you mind.  So please

14         keep that in mind.

15              THE DEFENDANT:  Thank you, your Honor.

16              THE COURT:  You're welcome.

17              I'm going to have the Government

18         summarize the terms of the plea agreement

19         here in open court.  You may go ahead and

20         follow along on your copy as we proceed.

21              So, Attorney Perry.

22              MR. PERRY:  Thank you, your Honor.

23              The proposed plea agreement takes the

24         form of a 12-page letter to Attorney

25         DiBenedetto bearing today's date, October

1          9th, 2018.

2              On page 1 the proposed agreement sets

3          forth the nature of the offenses to which

4          Mr. Edmonds apparently wishes to plead

5          guilty.  Those offenses are alleged in the

6          two-count information that's not been filed

7          and they are, first, what's known as a

8          multi-object conspiracy all in violation of

9          Title 18 United States Code Section 371.  In

10         other words, it is a conspiracy to commit

11         four other crimes, those crimes being wire

12         fraud, commodities fraud, commodities price

13         manipulation and spoofing, again all in

14         violation of Section 371 of Title 18 of the

15         United States Code.  That's the first

16         charge.

17             The second charge is alleged in Count 2

18         of the information is a substantive count of

19         commodities fraud in violation of Title 18,

20         United States Code section 1348(1).

21             The proposed agreement then goes on to

22         describe the essential elements in each of

23         those charges.  Would your Honor have me

24         cover those now?

25             THE COURT:  Yes, please.  Thank you.

1          MR. PERRY:  Thank you, your Honor.

2          THE COURT:  Actually you can hold off

3      until we get to -- I'm going to do that

4      separately.

5          MR. PERRY:  Yes, your Honor.

6          Beginning on page 2 the proposed

7      agreement sets forth the maximum penalties

8      that could be applied, that could be imposed

9      for each of the offenses.  I'm now in the

10     middle of page 2 setting forth the maximum

11     possible term of imprisonment that could be

12     imposed under the statute.  For Count 1 that

13     is 5 years of imprisonment; for Count 2 that

14     is 25 years of imprisonment.  As a result

15     Mr. Edmonds, if he does go forward and plead

16     guilty today, faces a maximum total term of

17     imprisonment for both offenses of 30 years.

18          In addition if the Court, and here that

19     would be Judge Chatigny at the time of

20     sentencing, ultimately were to impose a

21     sentence that includes a term of

22     imprisonment, Judge Chatigny could also

23     impose a term of supervised release.  As to

24     Count 1 that would be up to 3 years; as to

25     Count 2 the maximum term of supervised

1          release would be 5 years.  And for either

2          count if Mr. Edmonds were to violate any

3          term of his supervised release he would face

4          an additional term of imprisonment of up to

5          2 years per violation at to Count 1, up to 3

6          years per violation as to Count 2.

7               My understanding under the guidelines

8          is that the recommendation is that any term

9          of supervised release if such a term were to

10         be imposed on both counts would run

11         concurrently.

12              THE COURT:  So let me ask you on that

13         one because it's a little confusing

14         potentially and I want to make sure everyone

15         understands it, especially Mr. Edmonds.

16              So if there's a violation of the terms

17         of supervised release, since the terms don't

18         typically break down by count, is he looking

19         at 2 plus 3 years or is he looking at the

20         higher 3 year?  Because a judge isn't

21         typically going to say I find that you have

22         violated the release as it relates to Count

23         1 versus Count 2.  So if he were to violate

24         what is he looking at, 5 years, 2 years or 3

25         years?

1          MR. PERRY:  I haven't thought that

2          through, your Honor.  My assumption is that

3          it's -- let me back up and say the parties

4          haven't explicitly discussed that.  I don't

5          know the answer as a matter of law.

6          My assumption, for whatever that may be

7          worth and it may be worth very little, is

8          that the term of supervised release would

9          actually have to be imposed separately as to

10         each of the counts, and that in theory he

11         could be facing up to 5 years.  I think as a

12         practical matter it's very unlikely and that

13         it would likely be that the same conditions

14         are imposed as to each of the counts.

15         THE COURT:  Okay.

16         MR. PERRY:  And such that the violation

17         could be I suppose a maximum of 3 years.  In

18         other words, if Mr. Edmonds were to violate

19         a term of supervised release and that

20         violation -- or as to each count and the

21         maximum were imposed, I think it would be 2

22         years for Count 1, 3 hears for Count 2, but

23         those would be concurrent, such that the

24         effective term would be 3 years from the

25         Government.

1          THE COURT:  All right.

2          MR. PERRY:  That's my understanding,

3     but I --

4          THE COURT:  That's how I would have

5     construed it.

6          MR. PERRY:  Yeah.

7          THE COURT:  And there will be a point

8     where I have to advise Mr. Edmonds of the

9     potential consequences of entering a plea of

10    guilty, but I wasn't frankly completely sure

11    on that answer, so I thought I'd interrupt

12    your presentation and put you on the spot

13    with hit.

14         MR. PERRY:  Sure.  So that's my best

15    effort to construe an issue that frankly I

16    had not anticipated.  I think that's

17    probably the right reading, you know, to the

18    extent that I am right now limiting the term

19    of imprisonment that the Government could

20    advocate in the future.  Knowing that I'm

21    like going to be the person who is on the

22    hook for this later on, I'm comfortable

23    tying my hands, the Government hands in that

24    fashion.  But as to what the correct answer

25    is I can only offer by best guesses.

```
 1                    THE COURT:  I understand.  Thank you.
 2                    MR. PERRY:  Shall I continue?
 3                    THE COURT:  Yes, please.  Thank you.
 4                    MR. PERRY:  I'm on the top of page 3
 5            right now, your Honor.  So each of the
 6            offenses alleged in the information carries
 7            a maximum fine of $250,000.  That's subject
 8            to one proviso under what's known as the
 9            alternate fine provision, Title 18 United
10            States Code Section 357.  Under the
11            alternate find provision the maximum fine
12            that could be imposed is either that figure
13            I just mentioned, $250,000, or twice the
14            gross or twice the gross loss flowing from
15            the offense.
16                 Here the parties are not yet in a
17            position or have calculated on what either
18            of those figures could be, but under that
19            provision whichever is -- whatever is the
20            highest amount, twice the gross gain, twice
21            gross loss or $250,000, would be the maximum
22            fine that could be imposed as to each count.
23                 There's also a mandatory special
24            assessment of $100 on each count of
25            conviction, meaning a total of $200 that Mr.
```

1          Edmonds is agreeing to pay today.  There's

2          also restitution which would be mandatory

3          under Title 18 United States Code Section

4          3663(a).

5               Flowing from the fact that the parties

6          have not yet determined the loss amount we

7          also don't as we stand here today understand

8          the restitution, what the restitution amount

9          could be.  That will be by the sentencing

10         court with input from the parties I'd

11         imagine, but pursuant to the provisions of

12         Section 3664 of Title 18 United States Code.

13              I should also say that as set forth --

14         well, the plea agreement by virtue of the

15         absence of any agreement as to restitution,

16         Mr. Edmonds is reserving his right to argue

17         for apportionment under 3664 or any other --

18         otherwise reserving his arguments as to

19         restitution.

20              The agreement then goes on to discuss

21         the general applicability of the sentencing

22         guidelines in this case, and then I'm on

23         page 4 now to discuss what's known as

24         acceptance of responsibility.  Essentially

25         under this provision of the proposed

1          agreement the Government is agreeing based

2          on Mr. Edmonds' prompt acceptance of

3          responsibility if he does go forward and

4          enter a guilty plea today, that he should

5          receive some credit under the guidelines in

6          the form of a 2 or I believe more like a 3-

7          point reduction in his total offense level.

8          That would go down to his ultimate benefit

9          because it would lower his advisory

10         sentencing guidelines range of imprisonment

11         under their guidelines.

12              So the Government is agreeing to make

13         that recommendation to Judge Chatigny at the

14         time of sentencing.  When I say that

15         recommendation I mean of course that Mr.

16         Edmonds should receive credit for his

17         acceptance of responsibility.

18              However, that agreement on the

19         Government's part is contingent on Mr.

20         Edmonds continuing to accept responsibility

21         by truthfully admitting the conduct

22         comprising both offense of conviction and

23         any other additional relevant conduct for

24         which he would be accountable under the

25         guidelines, as well as Mr. Edmonds

1          truthfully disclosing to the Government and

2          to the United States Probation Office

3          certain personal information, including a

4          truthful and complete financial affidavit.

5              Furthermore, as set forth in the

6          agreement, the Government would reserve the

7          right to seek denial for that credit or

8          acceptance of responsibility in any of the

9          following circumstances:  First, that the

10         Government comes into possession of new

11         information indicating that Mr. Edmonds has

12         not in fact terminated or withdrawn from his

13         criminal conduct and associations, or

14         information that could provide a basis of

15         adjustment for obstructing or impeding

16         justice.  Or third, if any terms of release

17         are imposed on Mr. Edmonds either by your

18         Honor today or some future date and Mr.

19         Edmonds were to violate those terms, in any

20         of those situations the Government would be

21         free to not recommend to the Court and that

22         Mr. Edmonds receive credit for his

23         acceptance of responsibility.

24             If that does happen, and of course no

25         one today perceives that it will, but if it

1          does happen Mr. Edmonds would not be

2          permitted to withdraw his pleas of guilty

3          for that reason.

4              I suppose I should pause here for one

5          moment.  I've been referring broadly to the

6          Government, and this is set forth in the

7          plea agreement but I should put on the

8          record as well.  Very often when I appear in

9          front of your Honor or my colleagues do,

10          when we say the Government we are referring

11          to the United States Attorney's Office for

12          the District of Connecticut.

13              Here I'm referring not only to my

14          office but to the broad section of the

15          Criminal Division of the U.S. Department of

16          Justice.  When I say Government I'm

17          referring to both of those entities.

18              THE COURT:  Very good.

19              MR. PERRY:  The proposed agreement then

20          goes on on page 5 to -- I suppose I should

21          say this as well, there is no guideline

22          stipulation in this case at this point.  In

23          other words, the parties have not attempted

24          to come up with a calculation as to what we,

25          the parties, believe is the correct

1          guidelines number at the end of the day, and

2          the parties are reserving their rights to

3          make arguments ultimately to Judge Chatigny

4          about what the guidelines level should be.

5              The agreement then goes on to describe

6          various rights that Mr. Edmonds would be

7          waiving if does go forward and enter his

8          guilty plea today.  Your Honor has already

9          covered those so with your permission I will

10         move over several of those.

11             I do want to in particular focus on

12         several provisions beginning on page 6.  One

13         is a Waiver of Statute of Limitations.  If

14         Mr. Edmonds does enter pleas of guilty today

15         he is expressly agreeing to waive any

16         defense or objection to those pleas that

17         might be available to him based on the

18         statute of limitations.  In other words,

19         he's agreeing not to come forward at some

20         future date and saying I want to withdraw

21         one or both guilty pleas because the conduct

22         that is alleged, the conduct that's being

23         charged is simply too old to be charged at

24         this date and time.

25             Similarly in a provision entitled

1          Waiver of Venue, Mr. Edmonds would be

2          agreeing to waive and give up any defense or

3          objection with respect to venue here in the

4          District of Connecticut.

5               Furthermore, if Mr. Edmonds does plead

6          guilty today he is agreeing to waive any

7          challenge to the fact of his guilt, in other

8          words, to the conviction itself.  He can't

9          come forward absent some fundamental defect

10         in today's proceeding, he can't come forward

11         at some future date and say I wish to

12         withdraw one or both guilty pleas, I'm not

13         in fact guilty.

14              There is a different provision

15         beginning on page 6 and carrying over to

16         page 7 entitled Waiver of Right to Appeal or

17         Collaterally Attack Sentence.  And this goes

18         not to the fact of guilt or innocence but to

19         the sentence that will ultimately be imposed

20         by Judge Chatigny.  And Mr. Edmonds if he

21         does enter a guilty plea today and enter

22         into this agreement is agreeing to waive his

23         right to challenge the sentence that's

24         imposed so long as it's below the statutory

25         maximum term of imprisonment here for both

1          counts, meaning if the sentence is not more

2          than 30 years of imprisonment, and there are

3          other terms that are below certain statutory

4          maximums, but 3 years of supervised release,

5          $200 special assessment and $250,000 fine,

6          as long as the total effective sentence does

7          not exceed those terms, Mr. Edmonds will be

8          waiving his right to appeal that sentence or

9          judgment and attacking any other proceeding.

10         Meaning if he goes forward today, he pleads

11         guilty, one, he cannot seek to withdraw

12         either or both of the guilty pleas in some

13         future proceeding absent some fundamental

14         constitutional effect or claim of

15         ineffective assistance of counsel.

16             And two, whatever sentence is imposed,

17         as long as it's lower than those terms or it

18         doesn't exceed those terms I should say,

19         he's agreeing not to seek review of the

20         sentence by any other court or any higher

21         court.

22             The agreement then goes on to describe

23         the fact that Mr. Edmonds, if he does enter

24         this agreement and pleads guilty, he's doing

25         so freely and voluntarily without any

1          threats or other promises not set forth in

2          this agreement.

3               There are certain collateral

4          consequences that will flow from any

5          conviction and those are described on pages

6          7 and 8.  Important on page 8, and this

7          relates to Mr. Edmonds' past work as a

8          trader, and I'm spelling that T-R-A-D-E-R,

9          that Mr. Edmonds understands that by virtue

10         of the -- at least the 371 conspiracy

11         conviction and that's in Count 1, he will be

12         suspended from registration and denied

13         registration or re-registration for 5 years

14         or such longer period as the Commodity

15         Futures Trading Commission may determine.

16         And that during that period he essentially

17         -- I just want to be very clear about this

18         -- will not be able by virtue of that

19         suspension to work in the field that has

20         been his field now for over a decade.  And

21         that's an important collateral conviction

22         and so I just wanted to, as a collateral

23         consequence, I just wanted to stress that.

24              On page 8 the agreement describes that

25         if Mr. Edmonds does go forward and enter

1            guilty pleas today, and if those guilty

2            please are accepted by Judge Chatigny that

3            will satisfy his federal criminal liability

4            here in the District of Connecticut and with

5            the Fraud Section of the Criminal Division

6            as a result of his participation in the

7            conduct that forms the basis of the charges

8            in the information.

9                 I think that covers it, your Honor.

10                THE COURT:  All right.  Thank you.

11                MR. PERRY:  Thank you.

12                THE COURT:  You may be seated.

13                Mr. Edmonds, since there is a provision

14           on pages 6 and 7 of your plea agreement in

15           which you give up your right to appeal or

16           collaterally attack your conviction or

17           sentence, I want to go through that

18           provision with you just to make sure you

19           understand it, so please listen carefully

20           and you may follow along when I get there.

21                So under certain circumstances the law

22           provides that a defendant may have the right

23           to appeal or collaterally attack his

24           conviction and sentence.  An appeal is when

25           a defendant takes his case to a higher court

1            and askes that Appellate Court to review the

2            case for mistakes or legal error.

3                    A collateral attack is when a defendant

4            files a separate case which legally attacks

5            his conviction or his sentence.  In other

6            words, in that separate case the defendant

7            argues that there was something legally

8            wrong with the conviction or sentence and

9            asks the Court to set aside the conviction

10           or the sentence or both.  That separate

11           action is often referred to as a habeas

12           action.  Do you generally understand what

13           I've just described to you, sir?

14                   THE DEFENDANT:  Yes, your Honor.

15                   THE COURT:  Now, on pages 6 and 7 of

16           your agreement with the Government you're

17           giving up the right to appeal or

18           collaterally attack your conviction in any

19           proceeding.  You're also giving up the right

20           to appeal or collaterally attack your

21           sentence as long as the sentence does not

22           exceed 30 months of imprisonment, a 3-year

23           term of supervised release, a $200 special

24           assessment and a fine of $250,000.

25                   Have you read the appeal waiver

```
1            provision in the plea agreement, sir?

2                 THE DEFENDANT:  I have, your Honor.

3                 THE COURT:  And have you had a chance

4            to discuss it fully with your attorney?

5                 THE DEFENDANT:  Yes, your Honor.

6                 THE COURT:  Has your lawyer explained

7            the appeal waiver provision to your

8            satisfaction?

9                 THE DEFENDANT:  He has, your Honor.

10                 THE COURT:  Do you have any questions

11            about it?

12                 THE DEFENDANT:  At this time I do not.

13                 THE COURT:  Okay.  Are you confident

14            that you understand the provision?

15                 THE DEFENDANT:  Yes, your Honor.

16                 THE COURT:  Very good.  Thank you.

17                 Mr. Edmonds, does the agreement that

18            was outlined here in open court by the

19            Assistant U.S. Attorney and that you have in

20            front of you fully and accurately reflect

21            your entire understanding of the agreement

22            that you've entered into with the

23            Government?

24                 THE DEFENDANT:  Yes, your Honor.

25                 THE COURT:  All right.  Other than the
```

1          promises contained in the written agreement

2          has anyone made any promises to you that

3          have caused you to want to change your plea

4          or to enter a plea of guilty today?

5               THE DEFENDANT:  Has anybody changed?

6          I'm sorry, your Honor.

7               THE COURT:  I'm sorry.  I rephrased

8          that midstream.

9               THE DEFENDANT:  That's okay.

10               THE COURT:  Other than the promises

11          contained in the written agreement has

12          anyone made any promises to you that have

13          caused you to want to enter a plea of guilty

14          today?

15               THE DEFENDANT:  No, your Honor.

16               THE COURT:  Has anyone made any

17          promises to you as to what your sentence

18          will be?

19               THE DEFENDANT:  No, your Honor.

20               THE COURT:  Has anyone threatened you

21          in any way in an attempt to get you to plead

22          guilty today?

23               THE DEFENDANT:  No, your Honor.

24               THE COURT:  Has anyone attempted to

25          coerce or intimidate or force you into

1           pleading guilty today?

2                THE DEFENDANT:  No, your Honor.

3                THE COURT:  Do you want to plead guilty

4           today because you choose to do so

5           voluntarily and of your own free will, sir?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Okay.  All right.

8                I now want to discuss the possible

9           sentence and other consequences of entering

10          a plea of guilty today, so please listen

11          carefully while I do so.

12               If you decide to continue with your

13          decision to enter a plea of guilty today the

14          Court can sentence you under Count 1, which

15          is the conspiracy count, to a maximum term

16          of imprisonment of 5 years.  Under Count 2,

17          which is the commodities fraud offense,

18          there is a maximum term of imprisonment of

19          25 years for a total of 30 years under the

20          two counts combined.

21               For Count 1 you face a term of

22          supervised release of not more than 3 years

23          and for Count 2 a term of supervised release

24          for not more than 5 years.  Supervised

25          release just so that you understand is a

```
 1              form of court ordered supervision and it
 2              applies once you are released from any term
 3              of imprisonment, and while on supervised
 4              release you would be required to comply with
 5              certain conditions including that you do not
 6              commit any crimes.
 7                   If you were to violate any condition of
 8              your supervised release you could be
 9              required to serve a further term of
10              imprisonment of 2 years per violation with
11              no credit for time already spent on
12              supervised release.  That's under Count 1.
13              And under Count 2 a violation could result
14              in a further term of imprisonment of 3 years
15              per violation with no credit for time
16              already spent on supervised release, or
17              rather in prison.
18                   As you heard earlier I had a dialogue
19              with the Assistant United States Attorney
20              about what the 2-year, 3-year violation
21              means and I will tell you it's not crystal
22              clear to me what it means.  It may mean that
23              you could spend as many as 5 years per
24              violation, 2 years on one count, 3 on the
25              other, or it may mean that you can spend 3
```

1           years per violation because in theory the 2

2           years and the 3 years for any violation

3           would run concurrently.  I tend to think

4           that the 3-year maximum is the more

5           appropriate one but I will not be making

6           that decision.  That is Judge Chatigny's

7           decision.

8                The Government also seems to believe

9           that it would be 3 years per violation and

10          of course the Government would be the entity

11          that makes the argument if this happens in

12          front of Judge Chatigny.  But again I have

13          to point out the answer is not crystal

14          clear.  Judge Chatigny is the one who will

15          ultimately make that determination, so it

16          could be as much as 5 years, and so I want

17          to at least pause for a moment and make sure

18          that you understand that, sir.

19                THE DEFENDANT:  Yes, your Honor.  Thank

20          you.

21                THE COURT:  You're welcome.

22                Of course the easiest way to avoid that

23          is not to violate any conditions, he said

24          with moment of levity.

25                Continuing on with the various

1          consequences and penalties for entering a

2          plea of guilty, each offense carries a

3          maximum fine of $250,000 subject to what's

4          known as the -- excuse me, what's known as

5          the alternative fine.  And that provision

6          basically provides that the maximum fine

7          that may be imposed on you is the greatest

8          of the following amounts; twice the gross

9          gain to you resulting from the offense,

10         twice the gross loss resulting from the

11         offense, or $250,000.  As we sit here today

12         it sounds like nobody knows the answer as to

13         which one of those would be the maximum but

14         what you need to understand is if you

15         continue with your intention to enter a plea

16         of guilty today you would pay the maximum of

17         those three amounts that I've just

18         described.  Do you understand that, sir?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  Continuing on with the

21         other consequences of entering a plea of

22         guilty today you could be required to pay

23         the cost to the United States Government of

24         any period of imprisonment, probation or

25         supervised release.  If a sentence of

1          imprisonment is imposed the applicable rate

2          would be $2,036.92 per month.  If a sentence

3          of probation or supervised release is

4          imposed the applicable rate would be $294.60

5          per month.  If a fine of more than $2,500 is

6          imposed you can pay interest on any fine

7          amount that is not paid within 15 days of

8          the date you were sentenced.  In addition,

9          you would be required to pay a mandatory

10         special assessment of $100 on each count of

11         conviction for a total of $200.

12              Finally, the Court could order you to

13         make restitution as set forth in the rider

14         on restitution which is page 12 of the plea

15         agreement.  I asked you earlier if you have

16         read the entire plea agreement and if you

17         understand the plea agreement.  You had

18         answered yes to both those questions but I

19         just want to make sure for the record that

20         that included page 12 which is the rider

21         concerning restitution, sir.

22              THE DEFENDANT:  Yes, your Honor.

23              THE COURT:  Very good.  Thank you.

24              Let me ask the lawyers if my statement

25         of the penalties and consequences is

1            correct.

2                      MR. PERRY:  I believe it is.

3                      MR. DiBENEDETTO:  It is, your Honor.

4                      THE COURT:  Very good.  Thank you.

5                      Mr. Edmonds, do you understand these

6            possible consequences of entering a plea of

7            guilty today?

8                      THE DEFENDANT:  Yes, your Honor.

9                      THE COURT:  Do you have any questions

10           either for me or for your lawyer about any

11           of the consequences or penalties that I've

12           just described to you here in open court?

13                      THE DEFENDANT:  No, your Honor.

14                      THE COURT:  So earlier you advised me

15           that you are a United States citizen but the

16           Federal Court of Appeals requires me to

17           advise all defendants who are thinking about

18           entering a plea of guilty as to the

19           potential consequences of a guilty plea on

20           any immigration status that may have.  So I

21           know that you advised me you are a U.S.

22           citizen but please bear with me while I

23           discuss immigration consequences with you.

24                      Under certain types of offenses known

25           as removeable offenses there are a broad

1          range of crimes for which a non-citizen can

2          be removed from the United States or

3          deported from the United States if he or she

4          is found guilty of one of these offenses or

5          he pleads guilty to one of these offenses.

6          Removal and immigration consequences are not

7          controlled by this court.  They are the

8          subject of a separate proceeding.  And

9          therefore if you are not a United States

10         citizen no one, including your attorney, can

11         advise you with any great certainty as to

12         the effect of a guilty plea on your

13         immigration status.

14              Again, I know that you have advised me

15         that you are a United States citizen, but do

16         you understand what I've just described to

17         you concerning the effect of a guilty plea

18         on any immigration status that you may have?

19              THE DEFENDANT:  Yes, your Honor.

20              THE COURT:  Do you have any questions

21         about what I've just described to you?

22              THE DEFENDANT:  I do not, your Honor.

23              THE COURT:  I'm now going to discuss

24         the sentencing guidelines with you.

25              The United States Sentencing Commission

1          has issued guidelines that apply to this

2          case.  Have you and your attorney had a

3          chance to discuss how the sentencing

4          guidelines might apply to you?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  The sentencing guidelines

7          are advisory guidelines under which the

8          Court calculates a recommended sentence

9          using the specific facts of each case, and

10         the calculation results in a guideline range

11         of possible sentences.  The sentencing judge

12         in this case, Judge Chatigny, must consider

13         the sentencing guideline range as a

14         recommendation that she sentence you within

15         the sentencing guideline range, but he must

16         also consider any possible grounds for

17         departing from the sentencing guidelines.

18         In other words, Judge Chatigny is permitted

19         to tailor your sentence in light of certain

20         statutory sentencing factors outside of the

21         guidelines, but he is required to consider

22         the sentencing guidelines in determining the

23         appropriate sentence to impose.

24                    As I indicated earlier the sentencing

25         guidelines are not mandatory; they are

1            advisory.

2                 Now, the guideline range for your case

3            will only be determined after a document

4            known as a presentence report is prepared by

5            the United States Probation Office and you,

6            your attorney, and the United States

7            Attorney's Office have all had a chance to

8            read and comment on that document known as a

9            presentence report.  Until then nobody can

10           be sure what the sentencing guideline range

11           for your case will actually be.  Do you

12           understand that, sir?

13                 THE DEFENDANT:  Yes, your Honor.

14                 THE COURT:  Now, your lawyer may have

15           advised you as to this opinion as to what

16           the sentencing guideline range will probably

17           be, but what you need to understand for

18           purposes of today's proceeding is that your

19           lawyer's opinion could be wrong.  Do you

20           understand that, sir?

21                 THE DEFENDANT:  Yes, your Honor.

22                 THE COURT:  Now, if it turns out that

23           the sentencing guideline range is higher

24           than you and your attorney expected it to

25           be, the mere fact that you expected to be

1          sentenced under a lower sentencing guideline

2          range will not provide a basis for

3          withdrawing your guilty plea or overturning

4          your sentence.  Do you understand that, sir?

5                    THE DEFENDANT:  Yes, your Honor.

6                    THE COURT:  All right.

7                    It's my understanding, sir, that you

8          wish to plead guilty to a two-count

9          information charging you under Count 1 with

10          conspiracy to commit wire fraud, commodities

11          fraud, commodities price manipulation and

12          spoofing, all in violation of 18 United

13          States Code Section 371.  And under Count 2

14          you would be pleading guilty to commodities

15          fraud in violation of 18 United States Code

16          1348(1).

17                    In order to prove that you are guilty

18          of these charges the Government would have

19          to prove beyond a reasonable doubt certain

20          things known as the elements of the offense.

21          Those elements are listed on pages 1 and 2

22          of the plea agreement that you have in front

23          of you, so you may read along while I ask

24          Attorney Perry to please summarize the

25          elements of the offense.

```
1              MR. PERRY:  Certainly.
2          In order to prove Mr. Edmonds' guilt
3      the Government would have to prove the
4      following facts beyond a reasonable doubt as
5      to the conspiracy offense.
6          First, that a conspiracy or unlawful
7      agreement existed between two or more
8      persons to commit wire fraud, commodities
9      fraud, commodities price manipulation and
10     spoofing.
11         Second, that Mr. Edmonds knowingly,
12     willfully and voluntarily became a member of
13     or participant in that conspiracy.
14         And third, that Mr. Edmonds or one of
15     his co-conspirators committed the overt act
16     described in the information during the
17     period of the conspiracy and in effort to
18     further the purpose of the conspiracy.
19         As to the substantive commodities fraud
20     count offense charged in Count 2 the
21     Government would have to prove the following
22     three facts beyond a reasonable doubt.
23         First, Mr. Edmonds executed or
24     attempted to execute a scheme or artifice to
25     defraud any person.
```

1          Second, that that scheme to defraud was

2          in connection with any commodity for future

3          delivery, any option on a commodity for

4          future delivery, and here that's precious

5          metals futures contracts.

6          And third, that Mr. Edmonds acted

7          knowingly and with the specific intent to

8          defraud.

9          THE COURT:  Very good.  Thank you, sir.

10          Mr. Edmonds, again earlier I asked you

11          if you read the plea agreement and

12          understood the terms of the plea agreement

13          and I just want to ask you did you read the

14          elements of the offenses to which you are

15          offering to plead guilty today?  Did you

16          read those elements which are stated on

17          pages 1 and 2 and do you understand those

18          elements, sir?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  All right.

21          I'm about to ask you what you did that

22          shows that you are in fact guilty of the

23          offenses to which you are offering to plead

24          guilty.  Before answering that question you

25          can certainly take a moment to confer with

1           your attorney if you'd like to do so.  Would

2           you like a moment to speak to your attorney?

3               (Pause.)

4               THE DEFENDANT:  Thank you, your Honor.

5               MR. DiBENEDETTO:  We are prepared to

6           proceed, your Honor.

7               THE COURT:  All right.  Thank you.

8               In that case Attorney -- excuse me, Mr.

9           Edmonds would you please tell me what you

10          did that shows that you are in fact guilty

11          of the offenses to which you are offering to

12          plead guilty today?

13              THE DEFENDANT:  Yes, your Honor.

14              From in or about 2009 through 2015

15          within the Eastern and Southern Districts of

16          New York, the District of Connecticut, the

17          Northern District of Illinois and elsewhere,

18          I knowingly and willfully conspired with

19          others at JP Morgan to commit wire fraud,

20          commodities fraud, commodities price

21          manipulation and spoofing.  And I knowingly

22          and with the intent to defraud executed an

23          attempt to execute a scheme to defraud

24          others in connection with precious metals

25          futures contracts.

```
 1              During that time I was a precious
 2         metals trader at JP Morgan in New York.
 3         While at JP Morgan I was instructed by
 4         supervisors and more senior traders to trade
 5         in a certain fashion, namely to place orders
 6         that I intended to cancel before execution,
 7         which is also referred to as spoofing.  More
 8         specifically, I was instructed that if a
 9         client wished to sell futures I should
10         simultaneously place both bids and offers
11         with the intent of cancelling the bids prior
12         to execution.  In other words, by placing
13         bids that I never intended to execute I
14         would falsely transmit liquidity and price
15         information which would deceive other market
16         participants regarding supply and demand.
17         These actions would induce those other
18         market participants to trade against the
19         orders that we wanted to execute.  Stated
20         differently, by placing multiple bids which
21         we never intended to execute we created
22         market activity which artificially drove the
23         sale price up and induced other market
24         participants to purchase at an inflated
25         price.
```

1              The same procedure was followed if a

2        client wanted to buy futures.  In those

3        circumstances I was instructed to

4        simultaneously place both bids and offers

5        with the intent of cancelling the offers

6        prior to execution.

7              I personally traded using this strategy

8        with the knowledge and consent of my

9        supervisors.  These orders were placed

10       electronically and traveled interstate

11       because the orders were placed on JP Morgan

12       computers in New York and traveled to

13       servers in Chicago.  The false and

14       misleading information transmitted was

15       relied upon by market participants

16       throughout the United States, including

17       Connecticut.  Thank you.

18             THE COURT:  Thank you.  And let me just

19       ask you two quick follow-up questions.  The

20       conduct that you just described in great

21       detail, did you know what you were doing,

22       sir?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And did you engage in that

25       conduct voluntarily and of your own free

1          will, sir?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  All right.  Thank you.

4                    Is that satisfactory to the Government?

5                    MR. PERRY:  It is with just one proviso

6          and a technical matter, but there is a

7          particular overt act requirement and that's

8          the overt act that's identified in the

9          information which also forms of the basis of

10         the substantive commodities fraud count, and

11         Mr. Edmonds, I believe he's prepared to say

12         this, but if he could just simply be asked

13         that he committed that overt act I think

14         that would be adequate.

15                   THE COURT:  All right.  I can -- yes, I

16         will ask.  I thought he actually described

17         an overt act -- well, I guess it was a

18         general description of an act but --

19                   MR. PERRY:  I may be being too

20         technical here, your Honor.  I just in an

21         abundance of caution perhaps the Court might

22         consider an inquiry.

23                   THE COURT:  All right.

24                   So let me ask, Mr. Edmonds, if you have

25         the copy of the information.  It makes

1            reference to a situation that occurred on

2            October 12th, 2012 at approximately 1:08 p.m.

3            where you allegedly placed a spoof order to

4            sell 402 silver futures contracts at the

5            price of 33.610.  Is that allegation true

6            and can you elaborate a little bit more on

7            that situation please?

8                THE DEFENDANT:  Yes, your Honor, what

9            is true.

10                MR. PERRY:  And thank you, your Honor.

11            Simply that he had the intent to cancel that

12            order before execution.  I think that's

13            probably --

14                THE DEFENDANT:  Yes, I had the intent

15            to cancel the order before execution, you

16            Honor.

17                THE COURT:  All right.  Very good.

18                MR. PERRY:  Thank you, your Honor.  I

19            appreciate the indulgence.

20                THE COURT:  No worries.  I think it

21            makes sense in the interest of being extra

22            cautious to have him identify a specific

23            trade.  I know that when he was telling me

24            what he did that shows that he's guilty, he

25            did say that he had executed a number of

1        trades that he knew at the time that he was

2        going to cancel and that he ultimately did

3        cancel and that had the effect of basically

4        committing a fraud.  So I felt that that was

5        sufficient but it doesn't hurt to have him

6        acknowledge the specific act that's in the

7        information so I appreciate it.

8            MR. PERRY:  Thank you, your Honor.

9            THE COURT:  Mr. Edmonds, I know that's

10       a difficult thing to do here in open court

11       but I appreciate your being forthcoming with

12       me in answering the question.  So I

13       appreciate it.

14           THE DEFENDANT:  Thank you, your Honor.

15           THE COURT:  Thank you.

16           So I find that that is satisfactory.

17       Mr. Edmonds, just in case you do change your

18       mind about entering a plea of guilty I'm

19       going to have the Government briefly

20       describe to me what it would prove at trial

21       if the case went to trial to show that you

22       are in fact guilty of the offenses to which

23       you're offering to plead guilty.  So please

24       listen carefully while I have the Government

25       do so.

1          Attorney Perry.

2          MR. PERRY:  Thank you, your Honor.

3          And with your Honor's permission I'm

4      largely going to relay on the proposed

5      written stipulation here augmented by a few

6      facts that I'll set forth.

7          So first of all, at any trial in this

8      matter the Government would call a series of

9      witnesses, introduce a series of business

10     records, and in particular would introduce a

11     voluminous set of trade data and analyses

12     thereof to show and illustrate I would say

13     conservatively hundreds of trades both to

14     buy and sell precious metals futures

15     contracts, meaning gold and silver and

16     platinum and palladium.  Those orders having

17     been entered by Mr. Edmonds and by other

18     traders at JP Morgan during the time period

19     roughly from 2009 to 2015.

20         Through that evidence, meaning the

21     witnesses, the business records and then the

22     trade data analysis the Government would

23     show that these orders were executed from

24     computer terminals in New York, that the

25     orders were sent to computer exchanges --

1           excuse me, computer servers operated by the

2           CME Group, Chicago Mercantile Exchange Group

3           in Chicago in the Northern District of

4           Illinois and that other market participants

5           were able to view the information contained

6           in those orders from locations across the

7           country, including in Connecticut.

8                The Government would show that the

9           orders that were entered and executed, that

10          were ordered -- that were entered, excuse

11          me, by Mr. Edmonds and his fellow traders at

12          JP Morgan were at different times both to

13          buy and sell these futures contracts as I

14          acknowledged, and that in hundreds of

15          instances those orders were placed

16          simultaneously on both sides of the market

17          in quantities, at prices and at times that

18          are strongly suggestive and the Government

19          would seek to show at trial were indicative

20          of an intent to cancel either the buy side

21          or the sell side order depending on the

22          transaction before that order could be

23          executed.

24                The Government would show that as I say

25          in particular though the timing and the

1     sequence of the trades that were entered and

2     ultimately the cancellations of certain of

3     those trades and would show and derive from

4     there the inference that at the time that

5     certain of the orders were entered it was

6     Mr. Edmonds' intent and likewise the intent

7     of other traders at JP Morgan to cancel said

8     orders before they could be executed.

9          And I suppose I should just say,

10    although everyone I think may this

11    understanding of it now that one term for

12    that practice of entering orders with the

13    intent to cancel them is spoofing.  That

14    this deceptive trading strategy was designed

15    to and did in fact have the effect of

16    manipulating the price of these gold and

17    silver and other precious metal futures

18    contracts, those futures contracts being

19    commodities within the statutory term, and

20    that the intent was to deceive and to

21    defraud other market participants meaning

22    other traders who were active in the markets

23    at the time and actively traded on the false

24    information that was conveyed in those

25    orders that had the intent, that Mr. Edmonds

1          and his fellow traders had the intent to

2          cancel.

3               I should say that at all times Mr.

4          Edmonds had been trained on this trading

5          strategy by others at the bank, including

6          the supervisors and more senior traders and

7          that there was an understanding among that

8          group of traders at JP Morgan at the time

9          that this was the manner in which they

10         collectively would trade these precious

11         metals futures contracts.

12              My colleague is noting that the

13         Government would also call witnesses to

14         testify that -- and I may have mentioned

15         this -- that the precious metals futures

16         contracts in question are commodities for

17         future delivery and I'm noting that only in

18         an abundance of caution to make sure that

19         I'm hitting the various elements of the

20         different objects of this multi-object

21         conspiracy here.

22              The Government would also show that

23         among these hundreds of orders that were

24         traded in this manner were orders that

25         affected other market participants in

1         Connecticut and that one of those orders is

2         the one that's described in detail in the

3         information occurring on October 12, 2012.

4         And the Government would also show frankly

5         that there were other such orders affecting

6         market participants in Connecticut at

7         various trading institutions here in

8         Connecticut who relied to their detriment on

9         the false information injected into the

10        market by Mr. Edmonds and other traders at

11        the bank.

12            I suppose one thing I should also

13        mention since I'm trying to cross all the

14        T's and dot all the I's here, spoofing

15        itself, there's no substantive spoofing

16        count here but spoofing itself as a crime

17        only became illegal under that name with the

18        enactment of Dodd-Frank and the effective

19        date was July 2011.

20            I'm mentioning this because the

21        conspiracy count begins -- alleges a

22        starting date of 2009.  This is what's

23        sometimes called a straddle conspiracy,

24        meaning that one of the objects here that's

25        spoofing only became illegal under that name

1          in the middle of the conspiracy.  But the

2          Government would also show that the

3          conspiracy to commit spoofing by that name

4          also post-dated July 2011 and continued as

5          late as 2015 and was ratified and therefore

6          continued after July of 2011.

7              This is hard with these multi-object

8          conspiracies.  I believe that I have

9          summarized the evidence that the Government

10         would expect to put on at any trial in this

11         case.

12             THE COURT:  Very good.  Thank you.  I

13         know it's difficult and it's complicated and

14         I appreciate it from both sides.  Each side

15         has worked hard on this I can tell.

16             Mr. Edmonds, did you hear what the

17         Government just described here in open

18         court?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And did you -- I know that

21         there was much covered, but did you hear

22         anything with which you disagreed?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  All right.

25             So I held off on having you sign the

1           stipulation of offense conduct on pages 10

2           and 11, but let me just ask for the record

3           have you read the Stipulation of Offense

4           Conduct on pages 10 and 11 and the plea

5           agreement, sir?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  And do you understand the

8           statements that are contained on those

9           pages?

10               THE DEFENDANT:  Yes, your Honor.

11               THE COURT:  All right.  And are these

12          statements truthful and accurate to the best

13          of your knowledge and belief?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  All right.  In that case

16          you may go ahead and sign the signature line

17          on page 11 of the plea agreement at this

18          point.

19               (Pause.)

20               THE COURT:  And Attorney DiBenedetto,

21          I'm going to pronounce it a different way

22          each time, but DiBenedetto, you may go ahead

23          and sign as well.

24               MR. DiBENEDETTO:  Both myself and Mr.

25          Edmonds have signed the agreement.

1           THE COURT:  Very good.

2           Attorney Perry, you may go ahead and

3     sign it if you haven't signed it already.

4           MR. PERRY:  Thank you, your Honor.

5           THE COURT:  All right.

6           Mr. Edmonds, I'm about to take your

7     guilty plea.  You have the right to have the

8     charges read to you here in open court or

9     you can waive or give up the reading of the

10    charges and proceed directly to your plea.

11    Do you wish to waive or give up the reading

12    of the charges, sir?

13          THE DEFENDANT:  I wish to waive them,

14    your Honor.

15          THE COURT:  In that case could you

16    please stand while the courtroom deputy puts

17    you to your plea.

18          COURTROOM DEPUTY:  In the case of

19    United States of America vs. John Edmonds,

20    Criminal Case Number 3:18-CR-239 RNC,

21    charges you as to Count 1 in violation of

22    Title 18 United States Code section 371; and

23    as to Count 2 in violation of Title 18

24    United States Code Section 1348 -- is that a

25    1 or --

```
1              THE COURT:  It's a 1.

2              COURTROOM DEPUTY:  1.  I'll do it

3         again.  As to Count 2, all in violation of

4         Title 18 United States Code Section 1348(1),

5         how do you plead?

6              THE DEFENDANT:  I plead guilty.

7              COURTROOM DEPUTY:  Your Honor,

8         Defendant has pled guilty to Counts 1 and 2

9         of the information.

10             MR. PERRY:  Could we perhaps do it

11        separately as to each count?

12             THE COURT:  Yes, I think that would

13        make sense because I thought I only heard

14        the one but -- so as to 18 -- 371, but --

15             COURTROOM DEPUTY:  The first one?

16        Okay.

17             MR. PERRY:  I may have missed it.  I

18        apologize.

19             COURTROOM DEPUTY:  In the case of

20        United States of America vs. John Edmonds,

21        Criminal Case Number 3:18-239 RNC, as to

22        Count 1 all in violation of Title 18 United

23        States Code Section 371; as to Count 2 all

24        in violation of Title 18 United States Code

25        Section 1348(1), how do you plead?
```

1          THE DEFENDANT:  I plead guilty.

2          COURTROOM DEPUTY:  Your Honor,

3     Defendant has pled guilty as to Count 1 and

4     2 of the information.

5          THE COURT:  All right.  Thank you.

6          You may be seated.

7          Attorney Perry?

8          MR. PERRY:  Yes, your Honor.

9          THE COURT:  Can I please at this point

10    have the fully executed plea agreement?

11         MR. PERRY:  Yes, your Honor.

12         THE COURT:  Oh, I'm sorry, I thought it

13    was passed.

14         MR. PERRY:  No, it was.  I was just --

15    thank you, your Honor.

16         (Pause.)

17         THE COURT:  All right.

18         Based on the answers given to my

19    questions here in open court today by Mr.

20    Edmonds, based on the remarks of the Defense

21    counsel and the Assistant United States

22    Attorney, I find that Mr. Edmonds is fully

23    competent and capable of entering an

24    informed plea today; that he fully

25    understands the nature of the charges

1          against him; that he knows of his right to a

2          jury trial as well as all of the other

3          trial-related rights that I described to him

4          here in open court.

5               I further find that Mr. Edmonds knows

6          and understands of the possible maximum

7          sentences as well as the other consequences

8          of entering a plea of guilty today.  And I

9          further find that Mr. Edmonds' plea of

10         guilty is knowing and voluntary and

11         supported by an adequate factual basis as to

12         each of the essential elements of the

13         offenses to which he's pleading guilty.

14              In reaching this final conclusion I

15         rely on the written statements contained in

16         the stipulation of offense conduct, the oral

17         statements made by Mr. Edmonds here in open

18         court in response to my question, tell me in

19         your own words what you did that show that

20         you are in fact guilty of the offenses to

21         which you're offering to plead guilty, and

22         the Government's presentation when I asked

23         Attorney Perry what the Government would

24         prove if the case went to trial that

25         shows that the Defendant is guilty of the

1           offenses to which he is offering to plead

2           guilty.

3                Based on all of these factual findings

4           I am going to recommend that Judge Chatigny

5           accept Mr. Edmonds' plea of guilty today and

6           the case will be referred to the United

7           States Probation Office for a presentence

8           investigation as well as a presentence

9           report.

10               I have just handed the fully executed

11          plea agreement to my Courtroom Deputy for

12          filing.  It is so ordered.

13               Mr. Edmonds, just so that you

14          understand how the process works from this

15          point forward, at some point after today's

16          proceeding a United States Probation Officer

17          is going to interview you and then prepare a

18          document that you've heard me make reference

19          to, a document known as a presentence

20          report.  That presentence report will

21          eventually work its way to Judge Chatigny

22          and help him in determining the appropriate

23          sentence to impose.  Please bear in mind

24          that the Probation Officers report to the

25          Court as opposed to the United States

1          Attorney's Office and therefore your

2          cooperation with the Probation Officers will

3          generally be beneficial to you.

4               However, as I just indicated the

5          document that the Probation Officer is going

6          to prepare, this document known as a

7          presentence report, is going to play a very

8          important role in the determination of your

9          sentence, so you should have a careful

10         conversation with your attorney before

11         meeting with and speaking to the Probation

12         Officer.  You understand that, sir?

13              THE DEFENDANT:  Yes, your Honor.

14              THE COURT:  All right.

15              Counsel for either party may submit to

16         the Probation Office its version of the

17         offense.

18              Mr. Edmonds, just so that you

19         understand, you have the right to object to

20         items contained in or omitted from the

21         presentence report once it's prepared, and

22         your lawyer must read and review the

23         presentence report with you prior to the

24         date set for submitting objections to the

25         presentence report.

1              After receiving any objections from the

2         lawyers the Probation Officer shall make

3         any revisions that are necessary and conduct

4         any investigation that might be necessary,

5         and then the revised presentence report will

6         be submitted to the Court and to the

7         lawyers.

8              Once again your lawyer must read and

9         review the revised presentence report prior

10        to the sentencing hearing.

11             Judge Chatigny has issued a scheduling

12        order which I have just signed from the

13        bench.  The order will be available later on

14        CMECF, but just to give everyone a heads up

15        on the dates that are contained in that

16        order there are as follows:  The presentence

17        report must be disclosed to Defendant,

18        counsel for the Defendant and the Government

19        on or before November 7, 2018.  Counsel

20        shall communicate to the Probation Officer

21        any objections to the presentence report on

22        or before November 21st, 2018.  The amended

23        presentence report must be disclosed to

24        counsel and to the court on or before

25        December 1st, 2018.

1          Not later than 10 days before

2     sentencing counsel for both parties may

3     submit sentencing memoranda to the Court

4     addressing the following subjects:  Any

5     factual inaccuracy in the final presentence

6     report, the guidelines calculations, the

7     available sentencing options including

8     alternatives to incarceration, any

9     restitution issues, any bases for departure,

10    and any other factual or legal issue

11    relevant to sentencing.

12         As always both lawyers are directed to

13    Local Rule of Criminal Procedure, Rule

14    Number 32, to guide them in their careful

15    preparation for sentencing.

16         And Sentencing will take place on

17    December 19th, 2018 at 10:00 a.m. in Judge

18    Chatigny's courtroom.

19         I am filing that order with my

20    Courtroom Deputy.

21         (Pause.)

22         THE COURT:  And I know that this is Mr.

23    Edmonds' first appearance in court so let me

24    just ask what the position is of the

25    Government with respect to release or

```
 1              detention.
 2                   MR. PERRY:  The Government is very
 3              content to release in this case.
 4                   THE COURT:  All right.
 5                   MR. PERRY:  On a promise to appear.
 6                   THE COURT:  Okay.  That works in my
 7              world.
 8                   Let me ask if there are any other
 9              conditions other than the promise to appear
10              that need to be set.
11                   MR. PERRY:  None at this time, your
12              Honor.
13                   THE COURT:  All right, very good.  So
14              we'll release the Defendant on a promise to
15              appear.
16                   MR. PERRY:  Thank you.
17                   THE COURT:  Thank you.
18                   MR. DiBENEDETTO:  Thank you, Judge.
19                   (Pause.)
20                   THE COURT:  Well, this is -- I'm
21              usually paired with Judges Covelo, Squatrito
22              and Bryant.  So this is my first -- I
23              believe Judge Chatigny guilty plea and I'm
24              told that he does a petition to enter a plea
25              of guilty; is that correct?
```

```
 1                    MR. PERRY:  It is, your Honor.  It is,

 2           yeah.

 3                    THE COURT:  All right.  And the parties

 4           have filled out the petition then to a plea

 5           of guilty?

 6                    MR. DiBENEDETTO:  We have, Judge.  Just

 7           there is one question that we have with

 8           regards to -- there's one question that

 9           relates to statements made to law

10           enforcement, in this case in particular it's

11           sort of a have or have not check box.

12                    THE COURT:  All right.

13                    MR. DiBENEDETTO:  We propose to leave

14           that blank at this time.

15                    THE COURT:  All right.

16                    Other than that, is the petition

17           satisfactory to the Government?

18                    MR. PERRY:  It is, your Honor, other

19           than that -- including that I should say.

20                    THE COURT:  All right.  Well, if

21           there's no objection to having the have or

22           have not box left blank that's fine with me.

23           And the Government has just indicated that

24           the form is satisfactory as completed.

25                    Mr. Edmonds, let me just ask you if you
```

1          have had a chance to read the petition to

2          enter a plea of guilty.

3                    THE DEFENDANT:  Yes, your Honor.

4                    THE COURT:  And do you understand the

5          statements that are contained on that

6          document?

7                    THE DEFENDANT:  Yes, your Honor.

8                    THE COURT:  Do you have any questions

9          for your lawyer about that document or the

10         statements?

11                   THE DEFENDANT:  No, your Honor.

12                   THE COURT:  All right.  And are the

13         statements truthful and accurate to the best

14         of your knowledge and belief?

15                   THE DEFENDANT:  Yes, your Honor.

16                   THE COURT:  All right.  In that case if

17         you haven't already done so you may go ahead

18         and sign the petition to enter the plea of

19         guilty.

20                   (Pause.)

21                   THE COURT:  I've reviewed the petition

22         to ender a plea of guilty and the petition

23         is satisfactory, therefore I signed the

24         order page and as I indicated the petition

25         which is satisfactory further confirms my

1          previous findings that there is an adequate

2          factual basis as to each of the essential

3          elements of the offenses to which Mr.

4          Edmonds is pleading guilty.

5               With that, is there anything else we

6          need to address while we're in court?

7               MR. PERRY:  Nothing, your Honor.  Thank

8          you very much.

9               MR. DiBENEDETTO:  Nothing further,

10         Judge.  Thank you.

11              THE COURT:  All right.  Thank you both,

12         Counsel.  Thank you for making the long trip

13         up.  Sorry you got stuck in traffic.

14              MR. DiBENEDETTO:  My apologies for

15         being late.

16              THE COURT:  No worries, thank you.

17              Good luck to you, Mr. Edmonds.  As I

18         indicated at the outset I'm not going to

19         have any further role in connection with

20         this case or with respect to the sentence

21         that Judge Chatigny imposes, but I wish you

22         the best of luck in the future, sir.

23              THE DEFENDANT:  Thank you, your Honor.

24         I appreciate your time.  Thank you.

25              THE COURT:  You're welcome.  Thank you.

1            MR. PERRY:  Thank you, your Honor.

2            MR. DiBENEDETTO:  Thank you.

3            (Proceedings concluded at 1:17 p.m.)

1                          <u>CERTIFICATE</u>

2

3                    I hereby certify that the foregoing 83

4    pages are a complete and accurate transcription to the

5    best of my ability of the electronic recording of the

6    Change of Plea Hearing in re:  UNITED STATES OF

7    AMERICA vs. JOHN EDMONDS, Criminal No. 3:18-CR-00239

8    RNC-1, held before The Hon. Richard A. Richardson,

9    United States Magistrate Judge, in Hartford,

10   Connecticut, on October 9, 2018.

11

         *Suzanne Benoit*

12   _____

13   Suzanne Benoit, Transcriber            Date: 4/2/19

14

15

16

17

18

19

20

21

22

23