UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
---------------------------------------------------x
UNITED STATES OF AMERICA

-against- 18-CR-239 (RNC)

JOHN EDMONDS,

Defendant.
---------------------------------------------------x

SENTENCING MEMORANDUM ON BEHALF OF JOHN EDMONDS

The Law Office of
Joseph DiBenedetto, P.C.
1565 Franklin Avenue, Suite 301
Mineola, New York 11501
(212) 608 – 5858

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**--------------------------------------------------x**
**UNITED STATES OF AMERICA**

**-against -** **18-CR-239 (RNC)**

**JOHN EDMONDS,**

**Defendant.**
**--------------------------------------------------x**

## I. INTRODUCTION

John Edmonds is a loving husband, son, brother and family man who is worthy of a second chance. Edmonds, a non-violent and first-time offender, accepts responsibility for his behavior. He has learned a life-long lesson. His actions over the past five years combined with his many redeeming qualities favor leniency. Edmonds's immediate cooperation played a crucial role in government led criminal and civil investigations. His substantial assistance in the investigation and preparation of the government's case, combined with his in-court testimony played a major role in the conviction of the main participants within the conspiracy at trial. Moreover, Edmonds's substantial assistance was vital to the government's recovery of over Nine Hundred Million Dollars from JP Morgan Chase & Co. These factors, along with his role as a minor participant, his track record as a law-abiding and productive member of society over the last five years and that the advisory guidelines range overstate his level of involvement within the offense of conviction support a finding in favor of a non-incarceratory sentence. Each of these factors are addressed in greater detail throughout the memorandum.

### A. The Plea And Cooperation Agreement.

On October 9, 2018, Edmonds entered a plea of guilty to a two count information pursuant to a plea and cooperation agreement with the government. Edmonds entered a plea of guilty to

both Counts One and Two. Count One charges Conspiracy to Commit Wire Fraud, Commodities Fraud, Commodities Price Manipulation and Spoofing. Count Two charges Commodities Fraud.

The plea agreement includes a stipulation of the offense conduct but does not include an advisory guidelines computation. Additionally, the plea agreement allows either party to seek or object to a non-guideline sentence.

The cooperation agreement, in relevant part, recognizes that if the Government determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Government will file a motion pursuant to Section 5K1.1 of the Sentencing Guidelines advising the sentencing Court of all relevant facts and request that the Court sentence Edmonds in light of the factors enumerated within U.S.S.G. 5K1.1(a)(1)-(5).

B. The Presentence Investigation Report.

Edmonds and the government agree that the advisory guideline computation as calculated by the Department of Probation within the Presentence Investigation Report (PSR) is correct.

It is worthy to note that the department of probation correctly recognized Edmonds's minor role within the offense. More specifically, the PSR identifies the following relevant factors in support of a finding that a two-level reduction for minor role is appropriate:

- Edmonds did not play any role in planning or organizing the criminal activity;
- Edmonds is the lone defendant who was not a director-level employee of JP Morgan;
- Edmonds did not exercise decision making authority;
- Edmonds has been described as a "foot soldier" by another JP Morgan trader;

- The nature and extent of Edmonds's participation was significantly less than that of other charged defendants; and
- Edmonds stood to benefit and did benefit less than his co-conspirators

*See id*. at ¶ 26, pgs. 9-10.

Moreover, the PSR also recognized that Edmonds spoofed at levels significantly less than his co-conspirators and his spoofing resulted in a fraction of the total loss amount. More specifically, while the total loss amount for all co-conspirators is $55,000,000.00, Edmonds's participation amounted to only $316,000.00 in loss. *See id.*

## II. FACTORS IN SUPPORT OF A NON-INCARCERATORY SENTENCE.

### A. John Edmonds's Personal Background And Family History.

John Edmonds is 40 years old, born on September 14, 1982, in Brooklyn, New York to John Edmonds Sr. and Marie Ann Edmonds. John Sr., a retired New York MTA train operator passed away in 2019. Marie Ann is a retired crossing guard and lunch aid for the department of education.

Edmonds shares a good relationship with his sister Jennifer Edmonds, 41, who is unemployed and lives at home with their mom. Jennifer suffered from an eating disorder and battles depression. Jennifer and Marie Ann rely on John for both emotional and financial support. His mother and sister remain supportive during this difficult time.

Edmonds began dating Michelle Secondino in 2006. They bonded instantly and ultimately married in 2011. Michelle is a speech language pathologist. Edmonds plays an active role in the lives of Michelle's parents and siblings. In 2015, Michelle's brother overdosed and almost died, leaving his mother-in-law in a serious state of depression. Edmonds played a significant role in keeping Michelle's family together during these difficult times. While Michelle is aware of John's

current circumstances and remains extremely supportive, she struggles with the uncertainty surrounding the outcome of this matter.

Edmonds graduated from St. Johns University in 2004 with a degree in criminal justice and a minor in business administration. He also later obtained several security trading licenses, namely the series 7, 63 and 55.

B. The Government Is Recommending A Reduction In Sentence Pursuant To U.S.S.G. §5K1.1 And 18 U.S.C. §3553(e) Based On Edmond's Substantial Assistance To The Government.

Although not in the possession of defense counsel as of the date of this filing, the government has made clear that they intend to file a motion with the Court recommending a reduction in sentence based on Edmonds's substantial assistance to the government in the investigation and prosecution of others. Edmonds's cooperation was almost immediate, truthful and complete. His cooperation was essential in the formulation of the government's case against co-conspirators Gregg Smith, Michael Nowak and Christopher Jordan. His testimony against Smith and Nowak was a major reason for their convictions at trial. Moreover, his cooperation with the CFTC led to a settlement against JP Morgan Chase & Co. for close to One Billion Dollars. For all of these reasons, which will be addressed in greater detail below, it is respectfully requested that this Court impose a non-incarceratory sentence.

**1. Edmonds began to cooperate with the government almost immediately after being contacted by the Federal Bureau of Investigation and provided truthful and complete information regarding the offense conduct and the involvement of co-conspirators.**

It is aptly noted that shortly after being contacted by agents, Edmonds accepted responsibility for his actions and began to proffer with the government. In fact, Edmonds was the first person to meet and be debriefed by the government in connection with this conduct. The timing and detail of Edmonds's information was crucial to the government during their

investigative phase. Edmonds's information not only confirmed areas of investigation but also alerted the government to previously unknown criminal conduct involving other individuals. Edmonds's truthful and complete proffers allowed the government to better understand the data ultimately admitted as evidence against Nowak, Smith and Jordan.

**2. Edmonds provided substantial assistance to both the United States Attorney's Office and the Commodity Futures Trading Commission.**

Edmonds provided substantial assistance for both criminal and civil investigations. As noted above, Edmonds played an intricate role in the prosecution and ultimate conviction of Nowak, Smith and Jordan. Moreover, Edmonds's cooperation with the Commodity Futures Trading Commission proved to be equally productive as it resulted in the largest amount of monetary relief ever imposed by the CFTC—including the highest restitution ($311,737,008), disgorgement ($172,034,790), and civil monetary penalty ($436,431,811) amounts in any spoofing case. Simply stated, Edmonds's cooperation played an indispensable role in securing almost One Billion Dollars from JP Morgan Chase & Co.

**3. Edmonds was prepped for trial testimony on several occasions and testified at trial against co-conspirators.**

Edmonds's actions in furtherance of his acceptance of responsibility lasted over four years. In that time period, Edmonds met with the government on numerous occasions – both by phone and in person. He reviewed thousands of trade sequences in preparation for his trial testimony. He traveled to Washington D.C. and Chicago for trial preparation and ultimately testified during the trial of Nowak and Smith in Chicago over the course of four days. The government will agree that their success at trial was largely the result of Edmonds's testimony.

It is respectfully asserted that these actions clearly express Edmonds's commitment to cooperation and his level of remorse and acceptance of responsibility.

C. <u>The Advisory Guidelines Calculation Overstates The Loss Amount Attributable To Edmonds.</u>

The advisory guideline computation within the PSR which includes a loss calculation of $55,544,600.00 significantly overstates the market loss created by Edmonds. Attached hereto as Exhibit A is a declaration of Kumar Venkataraman, a government expert who provided analysis regarding trading activity and market loss calculations for each defendant. Based on the expert's conclusions, Edmonds is personally responsible for $316,000.00 of the $55,544,600.00 in market loss. *See Declaration of K. Venkataraman* at 30; *see also* PSR at 10, ¶26. Moreover, Edmonds spoofed less than half as often as Nowak, one seventh as often as Trunz and one fiftieth as often as Smith. *See Declaration of K. Venkataraman* at 30; *see* also PSR at 10, ¶26. Stated differently, Edmonds spoofed at a rate significantly lower than his co-conspirators and generated significantly less loss.

Based on the above findings, the advisory guideline calculation addressing the loss created by Edmonds's spoofing is significantly lower than the calculation contained within the PSR. The below calculation better illustrates this point:

| **PSR Calculation For Total Market Loss** | | **Calculation For Loss Created By Edmonds** | |
|---|---|---|---|
| Base Offense Level | 7 | Base Offense Level | 7 |
| Loss ($55,544,600.00) | +22 | Loss ($316,000.00) | +12 |
| 10 or more victims | +2 | 10 or more victims | +2 |
| Sophisticated Means | +2 | Sophisticated Means | +2 |
| Minor Role | -2 | Minor Role | -2 |
| Adjusted Offense Level | 31 | Adjusted Offense Level | 21 |
| Acceptance of Responsibility | -3 | Acceptance of Responsibility | -3 |
| Total Offense Level | 28 | Total Offense Level | 18 |
| Advisory Range | 78-97 months | Advisory Range | 27-33 months |

As illustrated above, the current advisory guideline range severely overstates the level of loss created by Edmonds. This fact is further supported by the department of probation's finding

that a two-level reduction for minor role is appropriate given that the nature and extent of Edmonds's participation was significantly less than that of the other charged defendants. *See id*. Therefore, in accordance with Title 18 U.S.C. §3553(a), we are respectfully requesting that this Court find: (1) that the loss amount as calculated within the PSR overstates Edmonds's involvement in the offense of conviction; and (2) that the starting point from which to grant a downward variance for his substantial assistance to the government in the investigation and prosecution of others be 27 to 33 months imprisonment based on the loss attributable to Edmonds.

D. John Edmonds Has Lived An Otherwise Law-Abiding Life And Has No Prior Arrests.

Prior to the instant matter, Edmonds had no prior arrests or convictions. This fact – no prior criminal history – is relevant for evaluating the possibility of recidivism. Recidivism data analyzed by the United States Sentencing Commission suggest that offenders with zero criminal history points ("zero-point" offenders), like Edmonds, have considerably lower recidivism rates than other offenders, including lower recidivism rates than the offenders in Criminal History Category I with one criminal history point. *See* United States Sentencing Commission Amendments Preliminary at 71-72 *citing to* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. More specifically, the report concluded that "zero-point" offenders were less likely to be rearrested than "one point" offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category. *See id*. Additionally, the Commentary to § 5C1.1 contains an application note that provides that "[i]f the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment." U.S.S.G. §5C1.1, comment. (n.4).

It is respectfully requested that this Court consider Edmonds's status as a non-violent and "zero point offender" and the empirical data identifying Edmonds as presenting the lowest risk of recidivism and impose a non-incarceratory sentence.

E. John Edmonds Has Maintained Employment For His Entire Adult Life.

John Edmonds has maintained meaningful employment for over twenty years. Coming from a working-class family, Edmonds entered the work force in 2002 while still in college and has maintained employment ever since. From 2002 through 2004, Edmonds was employed as a bank teller at New York Community Bank. From June 2004 through June of 2017, Edmonds worked at JP Morgan Chase. Edmonds started at a very junior position and worked his way up to the trading desk. Thereafter, Edmonds was employed for a short period of time at TD Bank as a trader. Since the instant offense, Edmonds was cut off from the industry he worked in for over 12 years. Unable to find work because of the stigma attached to the instant case, Edmonds sought employment wherever he could. Edmonds now works two jobs. He is a CrossFit instructor and a general manager at an auto leasing company.

F. John Edmonds Has Been Compliant With His Conditions Of Release And Has Proven Over The Past Five Years That He Can Continue To Lead A Law-Abiding And Productive Life.

Edmonds has been in contact with the government since August of 2018. He has been on pretrial supervision for approximately 56 months. During this time period, Edmonds has been fully compliant with his conditions of release set by Pretrial Services. *See* PSR at 4-5, ¶5 . It is respectfully asserted that an approximate five-year period consisting of steady employment combined with absolute compliance with Court-ordered supervision provides this Court with a sufficient benchmark by which to conclude that Edmonds can live both a law-abiding and productive life.

G. John Edmonds Plays A Prominent Role In Keeping Both The Edmonds And Secondino Families Together.

John Edmonds has played a major role in helping both his family and his wife's family in their times of need. Each family has had the misfortune of dealing with significant tragedy and each time Edmonds has been there as their rock.

As noted above, Edmonds's sister suffered from depression and an eating disorder brought on from an abusive relationship. This disorder was so severe that it required inpatient care. During this time, Edmonds was a steady influence in her life. He helped nurse his sister to health. To this day, Edmonds plays a very active role in his sister's care as she is not employed and still suffering from depression.

Also as noted above, Edmonds's brother-in-law developed a severe drug addiction eventually leading to an overdose. Luckily, he survived. The stress placed on Edmonds's mother-in-law because of her son's erratic behavior became unbearable. Edmonds's mother-in-law ultimately became depressed and was bedridden. Edmonds again stepped up and played a prominent role in helping his brother-in-law obtain treatment and stay sober. This is a battle that Edmonds helps with to this day. Additionally, Edmonds visited his mother-in-law daily and played a vital role in getting her up and out of bed and in the correct frame of mind. Moreover, Edmonds and his wife took in his sister-in-law to ensure that she would be removed from the volatile household and cared for properly.

More recently, Edmonds and his wife were once again forced to deal with very serious trauma. Approximately five months ago, his wife's uncle was murdered by his own daughter. Additionally, his wife's first cousin was also repeatedly stabbed by her sister and left to die. Miraculously, his wife's first cousin survived but was severely injured and did not have use of her

hands. Edmonds and his wife had her move in and cared for the cousin while she was in recovery. Edmonds literally fed her and helped her with everyday activities.

Edmonds's dedication to family and service to others speaks volumes of his true character. It is respectfully requested that this Court recognize these redeeming qualities when imposing sentence.

H. A Combination Of Factors Identified Above Support A Finding In Favor Of A Non-Incarceratory Sentence.

Should this Court find that any of the aforementioned arguments in favor of a non-incarceratory sentence are not sufficient standing alone, it is respectfully asserted that a combination of all the aforementioned factors do warrant a non-incarceratory sentence. *See United States v. Rioux*, 97 F.3d 648, 663 (2d Cir. 1996). Stated differently, Edmonds's substantial assistance in the prosecution of others, when combined with his extraordinary acceptance of responsibility, his role in the offense of conviction, his family ties and obligations and his track record of compliance over the last five years support a non-jail sentence.

## III. ATTESTATIONS OF JOHN EDMOND'S CHARACTER AND ABILITY TO BE A LAW-ABIDING AND PRODUCTIVE MEMBER OF SOCIETY.

Attached hereto collectively as "Exhibit B" are letters from family and friends attesting to Edmonds's character and ability to be a law-abiding citizen. Each letter is aimed to provide the Court with insight as to Edmonds's true identity – a generous and dedicated family man. In short, Edmonds is the glue that keeps the Edmonds and Secondino families together.

We also respectfully direct the Court's attention to Edmonds's letter also attached within "Exhibit B." This letter expresses his sincere remorse and acceptance of responsibility, the lasting effect this experience will have on him and his willingness to be guided by the lessons learned.

## IV. CONCLUSION.

For the aforementioned reasons, it is respectfully requested that this Court impose a non-incarceratory sentence.

Respectfully submitted,

/s/
Joseph DiBenedetto

cc: Government Counsel
(*Via* Email & ECF)